**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Criminal Action No. 22-cr-00277-NYW-1

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     SERGIO ALVAREZ, JR.,

      Defendant.

---

**ORDER ON MOTIONS TO SUPPRESS**

---

Defendant Sergio Alvarez, Jr. ("Defendant" or "Mr. Alvarez") moves to suppress evidence seized during a September 2, 2022 encounter with Pueblo police and statements made during a subsequent interrogation. *See* [Doc. 45 (the "Motion to Suppress Physical Evidence"), filed September 27, 2024; Doc. 46 (the "Motion to Suppress Statements"), filed September 27, 2024]. The Government opposes both Motions. *See* [Doc. 49; Doc. 50]. Defendant did not file a reply brief or seek leave to do so, and neither Party has requested an evidentiary hearing on the Motions. The Court took the Motions under advisement on October 21, 2024. [Doc. 55]. For the reasons set forth herein, the Motion to Suppress Physical Evidence and the Motion to Suppress Statements are respectfully **DENIED**.

# BACKGROUND[1]

On September 2, 2022, Pueblo Police Department ("PPD") Detective Brock Ruiz ("Detective Ruiz") and Detective Mario Diaz ("Detective Diaz") passed by Mr. Alvarez driving in a vehicle without a front license plate. [Doc. 45-1 at 1]. The detectives completed a U-turn and followed Mr. Alvarez, activating the police car's emergency lights and sirens. [*Id.*]. Mr. Alvarez pulled over, exited his vehicle, and ran. [*Id.*]. Detectives Ruiz and Diaz ran after Mr. Alvarez, who had taken off down the street into a residential fenced-in area containing a number of cars. [Doc. 45-2 at 18:43:28–18:43:44].[2] Mr. Alvarez fell as the officers caught up to him and the officers placed him in handcuffs. [*Id.* at 18:43:39–18:44:15]. A search of Mr. Alvarez's person yielded $1,027 in cash and two clear plastic bags. [*Id.* at 18:44:45–18:45:00; Doc. 45-1 at 1]. A few moments later, officers looked into the open window of Mr. Alvarez's car and observed a digital scale and a bag containing a substance that the officers observed looked "like meth." [Doc. 45-2 at 18:46:30–18:46:40; Doc. 45-1 at 1].

Mr. Alvarez was placed in the back of a patrol vehicle. [Doc. 46-1 at 18:47:47–18:48:00]. At one point, he stated that he "can't breathe," and he can be heard coughing at various points in officers' body-worn camera footage. *See, e.g.*, [*id.* at 18:53:55–18:54:10]. An officer asked Mr. Alvarez if he needed medical attention, but Mr. Alvarez's answer is not intelligible in the video. [*Id.* at 18:53:26–18:53:36]. EMTs arrived and treated Mr. Alvarez, [*id.* at 19:00:42–19:01:48], at which time Mr. Alvarez reported pain in

---

[1] The Court takes these facts, which do not appear to be in dispute, from the Parties' briefs and supporting exhibits.

[2] When citing to video exhibits, the Court cites to the timestamp appearing on right-hand corner of the video, rather than the timestamp displayed by the media player.

his side, [*id.* at 19:00:55–19:01:00].   After the EMTs left, an officer asked Mr. Alvarez if he wanted to go to the hospital, and the following exchange occurred:

>    Officer:  You wanna go to the hospital?
>
>    Mr. Alvarez:  [unintelligible] I -- I -- I can talk to him at the station, if you want.
>
>    Officer: Cool.  What do you wanna do, dude?  You were the one complaining about injuries and stuff, you made it seem like you wanna go --
>
>    Mr. Alvarez:  No, my fucking ribs hurt, bro.  They do --
>
>    Officer:  I got you.
>
>    Mr. Alvarez:  Like I'm not fucking sitting here fucking around, I'm telling you that if the motherfucker wants to talk to me, I'm gonna talk to him, bro.
>
>    Officer:   Do you want to talk at the station or do you wanna talk at the hospital?
>
>    Mr. Alvarez:  I'll talk to him.
>
>    Officer:  Hospital or station?
>
>    Mr. Alvarez:  I told you, homie, I'll talk to fucking KC[3] at the station.
>
>    Officer:  Alright, we'll go to the station.

[*Id.* at 19:07:49–19:08:28].   Mr. Alvarez was then driven to the PPD station.   [*Id.* at 19:15:40–19:16:40].

Mr. Alvarez was interrogated at the station by Detective Diaz and Agent Hughes. [Doc. 46-2 at 7:21:00–7:21:20].  At the outset, Mr. Alvarez was informed of his right to cease the interrogation at any point; his right to remain silent and that anything he said could be used against him in court; his right to consult with an attorney before questioning; his right to have a lawyer present during questioning; and his right to an appointed lawyer.

---

[3] The Court understands Mr. Alvarez to be referring to Agent KC Hughes ("Agent Hughes").  *See* [Doc. 50 at 1].

[*Id.* at 7:21:20–7:21:51]. Agent Hughes handed Mr. Alvarez a written document setting out these rights and instructed Mr. Alvarez to "read this, and if you're good talking with me now, then go ahead and sign" the document. [*Id.* at 7:21:51–7:21:58]. Mr. Alvarez immediately signed the document. [*Id.* at 7:21:58–7:22:02]; *see also* [Doc. 50-5 (the signed waiver)]. Mr. Alvarez then spoke to investigators for about an hour. *See* [Doc. 46-2 at 7:21:00–7:45:46, 8:37:20–9:06:05].

Mr. Alvarez was indicted on September 8, 2022, [Doc. 1], and was arrested on those federal charges on September 15, 2023, [Doc. 5]. A Superseding Indictment was filed on July 9, 2024, charging Mr. Alvarez with one count of possession with intent to distribute 5 grams and more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii); one count of possession with intent to distribute a mixture and substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). [Doc. 37].

Mr. Alvarez now moves to suppress (1) the cash and bags found during the search of his person, [Doc. 45 at 4], and (2) "all statements he made" during the interrogation with the PPD, [Doc. 46 at 12].

**LEGAL STANDARDS**

**I.    Fourth Amendment Principles**

The Fourth Amendment to the United States Constitution "protects the people from unreasonable searches and seizures of 'their persons, houses, papers, and effects.'" *Soldal v. Cook Cnty.*, 506 U.S. 56, 62 (1992) (quoting U.S. Const. amend. IV). "For a

search . . . to be reasonable, it must ordinarily be supported by a warrant based on probable cause," *United States v. Chavez*, 985 F.3d 1234, 1240 (10th Cir. 2021), and "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment," *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quotation omitted).  A warrantless search "is reasonable only 'if it falls within a specific exception to the warrant requirement.'"  *United States v. Kendall*, 14 F.4th 1116, 1121–22 (10th Cir. 2021) (quoting *United States v. Venezia*, 995 F.3d 1170, 1174 (10th Cir. 2021)).  The Government bears the burden of demonstrating that an exception to the warrant requirement applies.  *Chavez*, 985 F.3d at 1240.

## II.     Fifth Amendment Principles

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  "The Fifth Amendment affords citizens the right to remain silent, to have an attorney present, and to be informed of these rights when the individual is both (1) in custody and (2) subject to interrogation by police."  *United States v. Woody*, 45 F.4th 1166, 1176 (10th Cir. 2022). As such, prior to a custodial interrogation, a suspect must be warned that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."  *Miranda v. Arizona*, 384 U.S. 436, 479 (1966).  These procedural safeguards are paramount because a custodial interrogation "contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely."  *Id.* at 467.  "Without these warnings, custodial confessions are

presumed to be the product of coercion and are generally inadmissible for purposes of the prosecution's case in chief." *United States v. Guillen*, 995 F.3d 1095, 1109 (10th Cir. 2021). "If a defendant claims that a statement was obtained in violation of *Miranda*, the government must prove by a preponderance of the evidence that a valid waiver was executed." *United States v. Blackburn*, 785 F. App'x 539, 545 (10th Cir. 2019).

"[E]ven when a confession is not obtained in violation of *Miranda*, it must nonetheless be voluntary to be admissible." *United States v. Cash*, 733 F.3d 1264, 1280 n.12 (10th Cir. 2013). A confession is voluntary if it was "the product of an essentially free and unconstrained choice by its maker." *United States v. Lopez*, 437 F.3d 1059, 1063 (10th Cir. 2006) (quotation omitted). On the other hand, a confession is involuntary—and cannot be used against the defendant—if "law enforcement overbore the defendant's free will and critically impaired the defendant's capacity for self-determination." *United States v. Pena*, 115 F.4th 1254, 1261 (10th Cir. 2024) (quotation omitted). The Government bears the burden of demonstrating, by a preponderance of the evidence, that a confession was voluntarily made. *Lopez*, 437 F.3d at 1063.

## ANALYSIS

### I.   The Motion to Suppress Physical Evidence

Mr. Alvarez moves to suppress the cash and plastic bags found during the search of his person, arguing that this warrantless search violated his Fourth Amendment rights. [Doc. 45 at 4]. Relevant to his argument, the arrest warrant states that "[d]ue to Alvarez driving with a revoked driver[']s license and resisting arrest, [he] was searched . . . incident to arrest." [Doc. 45-1 at ¶ 5]. Mr. Alvarez contends that the search was not a valid search incident to arrest because he was stopped only "due to a minor traffic infraction," which

is not an arrestable offense, and officers could not have known that he was driving with a revoked license at the time they started the search. [Doc. 45 at 2–3]. He also argues that his flight does not amount to resisting arrest, so that conduct cannot justify a search incident to arrest, either. [*Id.* at 3]. In the alternative, he contends that police did not have reasonable suspicion to search his person "simply because [he] had no front license plate and ran" because flight alone does not create reasonable suspicion. [*Id.* at 3–4].

The Government responds that, by refusing to comply with the traffic stop and fleeing from police, Mr. Alvarez created probable cause to arrest him for the separate crimes of obstructing government operations, obstructing a police officer, eluding a police officer, or trespass. [Doc. 49 at 6–8]. In the alternative, the Government contends that even if the search was not a valid search incident to arrest, the inevitable discovery doctrine would preclude suppression of the cash and bags. [*Id.* at 9–11].

As mentioned above, a warrantless search is presumptively unreasonable unless it falls within one of the "specifically established and well-delineated exceptions" to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967). One recognized exception is a search incident to a lawful arrest, which permits officers to search "the arrestee's person and the area within his immediate control." *Gant*, 556 U.S. at 338–39 (quotation omitted). The relevant question is whether there was an objective and "legitimate basis for an arrest" for *any* crime, not just the crime for which the defendant is ultimately charged. *United States v. Sanchez*, 555 F.3d 910, 922 (10th Cir. 2009) (quotation omitted). Probable cause (i.e., a legitimate basis) to arrest "exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that

the arrestee has committed or is committing an offense." *United States v. Johnson*, 43 F.4th 1100, 1107 (10th Cir. 2022) (quotation omitted).

The Court respectfully agrees with the Government. The video evidence reflects that once police attempted to pull Mr. Alvarez over, he ran down the street, past parked cars, and into a residential fenced-in area. *See* [Doc. 45-2 at 18:43:28–18:43:44; Doc. 45 at 1–2]. As he was maneuvering around one of the cars, he fell, which permitted officers to catch up to and apprehend him. [Doc. 45-2 at 18:43:39–18:44:15; Doc. 45 at 1–2]. Mr. Alvarez's actions were sufficient to establish probable cause to arrest him for one or more crimes. *See* Colo. Rev. Stat. § 18-8-104(1)(a) ("A person commits obstructing a peace officer . . . when, by using . . . physical interference, or an obstacle, such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority."); *see also Dempsey v. People*, 117 P.3d 800, 811 (Colo. 2005) ("[A]ctual physical interference is not a prerequisite to conviction, as long as the suspect's actions are calculated in any appreciable degree to hamper or impede the police in the performance of their duty as they saw it." (quotation omitted)); *cf. People In Int. of K.D.W.*, 471 P.3d 1276, 1285 (Colo. App. 2020) (rejecting argument that evidence was insufficient for conviction of obstructing a peace officer because the defendant "simply ran away," since the defendant had also "placed a physical obstacle between himself and the officers when he jumped over a fence onto private property").

Because the officers had probable cause to arrest Mr. Alvarez for the state crime of obstructing a peace officer—even if he was ultimately not charged with that crime—the search of his person was a valid search incident to arrest. *Sanchez*, 555 F.3d at 922; *see*

8

*also United States v. Kazadi*, No. 19-cr-00518-WJM, 2020 WL 3415396, at *4 (D. Colo. June 22, 2020) ("By resisting Officer Zimmerman . . . Kazadi gave Officer Zimmerman probable cause to believe that he had committed a separate crime. . . .  Even if there is some question whether Kazadi actually violated [the state] statutes, the officers certainly had probable cause to suspect their violation.  And once that probable cause existed, the current state of Fourth Amendment case law gave the officers expansive authority to search Kazadi 'incident to arrest.'"); *United States v. Flores*, No. 19-cr-00522-WJM, 2020 WL 5365995, at *5 (D. Colo. Sept. 8, 2020) ("By hiding under the porch, Flores gave the officers probable cause to believe that he had committed a separate crime of trespassing on private property. . . .  [This] gave the officers probable cause to justify the full search incident to arrest that subsequently occurred.").

Because the officers' warrantless search was justified by an exception to the warrant requirement, the search was reasonable, and the evidence discovered therein will not be suppressed.  Having reached this conclusion, the Court need not address Defendant's alternative argument about whether there was reasonable suspicion to support the search.  The Motion to Suppress Physical Evidence is respectfully **DENIED**.

## II.    The Motion to Suppress Statements

Mr. Alvarez also argues that "all statements he made" during the interrogation were obtained in violation of constitutional rights and must be suppressed.  [Doc. 46 at 6, 12].  First, he asserts that his *Miranda* waiver is invalid because it was not knowing, voluntary, and intelligent.  [*Id.* at 6–9].  Then, he contends that even if he validly waived his *Miranda* rights, his statements should nevertheless be suppressed because they "were not the product of rational intellect and free will and [were] therefore involuntary."  [*Id.* at 10–12].

A.   *Miranda* **Waiver**

A waiver of *Miranda* rights "must be made voluntarily, knowingly, and intelligently." *United States v. Smith*, 606 F.3d 1270, 1276 (10th Cir. 2010).  A waiver is valid if it meets two distinct requirements:  first, the waiver must have been "the product of a free and deliberate choice rather than intimidation, coercion, or deception."  *Woody*, 45 F.4th at 1177.  Second, the waiver must have been "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  *Id.*

Courts employ a "totality of the circumstances" approach in evaluating whether a waiver of rights was voluntary.  *United States v. Augustine*, 742 F.3d 1258, 1265 (10th Cir. 2014) (quotation omitted).   Relevant considerations include "the suspect's age, intelligence, and education; whether the suspect was informed of his or her rights; the length and nature of the suspect's detention and interrogation; and the use or threat of physical force against the suspect."  *Smith*, 606 F.3d at 1276.

Defendant argues that his *Miranda* waiver was not made voluntarily, knowingly, or intelligently because (1) he did not read the waiver form before signing it; (2) he is seen in the interrogation video "looking exhausted" and "slumped over in his chair" with "his head almost down on the table at times"; (3) he had "abus[ed] a variety of narcotics" the day of the interrogation; (4) he was in physical pain during the interrogation; (5) officers "repeatedly made promises" to Mr. Alvarez that Agent Hughes would help Mr. Alvarez if he talked; and (6) he "has documented lifelong mental deficiencies and serious mental health issues."  [Doc. 46 at 9].   The Court considers these factors, as well as the other factors relevant to the Court's analysis, *see Smith*, 606 F.3d at 1276, below, and no one factor is dispositive, *see United States v. Burson*, 531 F.3d 1254, 1258 (10th Cir. 2008).

*The Waiver Form.*    First, Mr. Alvarez notes that he signed the waiver form immediately after it was handed to him, which he argues makes "clear" that he did not read the form.  [Doc. 46 at 9].  However, the video evidence shows that Mr. Alvarez was orally advised of his *Miranda* rights prior to signing the form.  *See* [Doc. 46-2 at 7:21:17–7:21:51].  Agent Hughes then told Mr. Alvarez to read the form and to sign it "if [Mr. Alvarez] is good talking with" the officers.  [*Id.* at 7:21:51–7:22:00].  Mr. Alvarez then signed the form.  [*Id.* at 7:22:00–7:22:02].  There is no evidence that the officers pressed Mr. Alvarez to sign the form quickly or prevented him from reading the form himself.  Defendant's decision to immediately sign the form without reviewing it does not negate the oral recitation of his *Miranda* rights or suggest that he did not understand his rights.  *See United States v. Graham*, No. 21-cr-00195-LJV-MJR, 2023 WL 11952997, at *11 (W.D.N.Y. Feb. 18, 2023) ("[E]ven if . . . [the defendant] did not read the waiver form, it would not invalidate the waiver here, since the warnings were also told to defendant verbally.").

Moreover, "a suspect's prior criminal history and concomitant familiarity with the *Miranda* warnings support a finding that a waiver was knowing and intelligent."  *United States v. Gilmore,* 945 F. Supp. 2d 1211, 1225 (D. Colo. 2013) (collecting cases), *aff'd*, 776 F.3d 765 (10th Cir. 2015); *see also Smith v. Mullin*, 379 F.3d 919, 934 (10th Cir. 2004) ("Mr. Smith had prior experience with the criminal justice system. . . .  The concepts encompassed by *Miranda* were not foreign to him.").  Mr. Alvarez has a notable criminal history, *see generally* [Doc. 17], and the video reflects that he had been previously read his *Miranda* rights by Agent Hughes specifically, *see* [Doc. 46-2 at 7:21:10–7:21:20 ("I'm gonna read you your rights, just like we did before")].  In sum, the record evidence shows

that Mr. Alvarez was clearly informed of his rights, *see Smith*, 606 F.3d at 1276, which supports a finding that the waiver was knowing, intelligent, and voluntary.

***Defendant's Drug Use.*** Next, Defendant notes his drug use on the day of the interrogation and his demeanor within the interrogation room—factors the Court considers together. While Defendant asserts that he "look[ed] exhausted" and was "slumped over in his chair" with "his head almost down on the table at times," this statement is not supported by any citations to specific timestamps in the nearly two-hour video. *See* [Doc. 46 at 9]. The Court observes from its own review of the interrogation video that during questioning, while there were brief moments where Mr. Alvarez may have had his head down or leaned forward, *see, e.g.*, [Doc. 46-2 at 7:23:59–7:24:24, 7:33:58–7:34:16], he was alert when engaging with officers and was able to understand and coherently answer their questions—including recalling specific cross-streets, describing the color and make of a car, and relaying directions to a specific area, *see, e.g.*, [*id.* at 7:22:55–7:23:42, 7:30:30–7:37:55]. Mr. Alvarez did lean forward and place his head on the table or in his arms during the break in questioning, *see, e.g.*, [*id.* at 7:45:45–7:47:47, 7:55:10–7:55:50], but after the officers came back, he sat up and continued to coherently answer questions, *see, e.g.*, [*id.* at 8:37:10–8:39:40]. Given the totality of Mr. Alvarez's demeanor throughout the entire video, the Court cannot conclude that Mr. Alvarez's slumping during the break is attributable to drug use as opposed to, for example, distress or boredom.

"A state of intoxication does not automatically render a waiver invalid." *United States v. Varela*, 576 F. App'x 771, 780 (10th Cir. 2014). "Where the government puts forth evidence showing the defendant was sufficiently in touch with reality so that he knew his rights and the consequences of abandoning them, the defendant must point to facts

sufficient to overcome that showing." *Burson*, 531 F.3d at 1258. The defendant must show that he was "impaired to a substantial degree [so as] to overcome his ability to knowingly and intelligently waive his privilege against self-incrimination." *Id.* "The mere fact of drug or alcohol use will not suffice." *Id.*

The Court concludes that Mr. Alvarez's slumping or the fact that he used drugs the day he was interrogated are insufficient to overcome the substantial video evidence that he was alert and coherent during his interrogation with Pueblo officers. As a result, Defendant's purported drug use or demeanor do not help establish that his *Miranda* waiver was unintelligent, unknowing, or involuntary. *See Varela*, 576 F. App'x at 780 (defendant's waiver was valid despite methamphetamine use where the defendant "appeared at all times during the interview to be lucid, and was 'alert yet relaxed'"); *Blackburn*, 785 F. App'x at 546 (affirming denial of motion to suppress where video evidence showed that the defendant could respond to questions, discuss images placed before him during the interrogation, and write on the images).

**Physical Pain.** Mr. Alvarez also relies on the fact that he was in physical pain to argue that his *Miranda* waiver was invalid. [Doc. 46 at 9]. While Mr. Alvarez informed officers when he was in the patrol car that he was in pain, he directs the Court to no evidence that he continued to feel pain during the interrogation. *See* [*id.*]; *see also United States v. Valdez*, 685 F. Supp. 3d 1110, 1226 (D.N.M. 2023) (considering lack of indication during interview that defendant remained in pain in determining whether *Miranda* waiver was voluntary). Nor does Defendant provide any evidence concerning the extent of his injuries, if any, which might permit the Court to ascertain whether Defendant was in pain during the interrogation or whether that pain overcame his free

will.  On the other hand, the video shows that Mr. Alvarez was able to fully engage with officers on a sustained basis during the interrogation.  *See United States v. Minard*, 208 F. App'x 657, 661 (10th Cir. 2006) (considering similar factors in concluding that the defendant's *Miranda* waiver "could not have been involuntary").  Pain does not create a presumption of involuntariness, *see id.*, and there is no record evidence demonstrating that Mr. Alvarez's pain was sufficient to render his *Miranda* waiver involuntary.

    ***Officer Promises.***  Mr. Alvarez asserts that Agent Hughes "repeatedly made promises" that he "will help Mr. Alvarez if he starts talking."  [Doc. 46 at 9].  Mr. Alvarez does not raise any argument explaining why this renders his *Miranda* waiver, which occurred prior to these purported promises, involuntary.  *See United States v. Warrington*, 78 F.4th 1158, 1167 (10th Cir. 2023) (suggesting that purported promise that was "made long after [the defendant] had voluntarily waived his *Miranda* rights" did not affect waiver).  Focusing on the *Miranda* waiver specifically, and noting that Mr. Alvarez was clearly informed of his rights and was not subject to any threat of physical force or otherwise coerced into signing the waiver, *Smith*, 606 F.3d at 1276, the Court cannot conclude that any purported promise occurring after the waiver rendered the waiver unknowing, unintelligent, or involuntary.

    ***Mr. Alvarez's Mental State or Mental "Deficiencies."***  The Court also considers Mr. Alvarez's age, intelligence, and education.  *See id.*  Mr. Alvarez was 35 years old at the time of the interrogation.  *See* [Doc. 45-1 at ¶ 4 (providing Defendant's birthdate)].  As for intelligence or education, Defendant argues that he "has documented lifelong mental deficiencies and serious mental health issues" which he says is "evidenced in

educational, Department of Corrections and CMHIP records." [Doc. 46 at 5, 9–10 (citing [Doc. 46-3)]].[4]

However, Mr. Alvarez does not argue that any particular affliction affected his ability to make a free and deliberate choice or to fully appreciate the nature of his right and the consequences of abandoning it, *see Woody*, 45 F.4th at 1177, and he does not explain how his mental health issues, alone or in combination, rendered his *Miranda* waiver involuntary, *see generally* [Doc. 46]; *see also United States v. De La Rosa-Calderon*, No. 20-cr-00036-WJM, 2021 WL 22337, at *3 (D. Colo. Jan. 4, 2021) (finding valid waiver despite the defendant's argument that his ADHD affected his ability to comprehend, as the defendant did not "explain the extent of his ADHD or provide any evidence by which the Court could evaluate his contention" or "explain how his ADHD affected his ability to comprehend and understand the consequences of waiving his *Miranda* warnings"). Moreover, the Court reiterates that the video evidence shows Mr. Alvarez rationally engaging with officers and answering their questions. *See United States v. Little*, No. 5:20-cr-00125-KG, 2020 WL 4923670, at *6 (D.N.M. Aug. 21, 2020) (despite the defendant's "below-average intelligence" and lack of education, waiver was valid because his discussions with officers "demonstrate[d] adequate understanding and the ability to respond appropriately").

---

[4] It is unclear to the Court whether the provided document is actually an official record or whether it is a summary created by counsel, as it bears no markings and indicates no author. *See* [Doc. 46-3 at 1–2]. This document states that Mr. Alvarez earned his GED when he was 26 years old and has a "low average IQ." [*Id.* at 1]. It also lists Defendant's mental health conditions. [*Id.* at 1–2].

Considering all of the relevant factors together, the Court finds that Mr. Alvarez's *Miranda* waiver was knowing, voluntary, and intelligent. Suppression of Mr. Alvarez's statements on this basis is not warranted.

## B.   The Voluntariness of Defendant's Statements

In the alternative, Mr. Alvarez asserts that even if he validly waived his *Miranda* rights, "all statements he made" must be suppressed because they were involuntarily made. [Doc. 46 at 10, 12]. His argument largely mirrors his assertion under *Miranda*— he contends that "[t]he totality of the circumstances in this case makes it clear that [his] statements were not the product of rational intellect and free will" and were therefore involuntary. [*Id.* at 12]. He contends that his confession was involuntary because (1) he was injured and in pain during the interview; (2) he was abusing narcotics that day; (3) he has mental deficiencies and mental health issues; and (4) Agent Hughes promised Defendant that he would help Defendant if he cooperated. [*Id.*].

In evaluating the voluntariness of Mr. Alvarez's interrogation statements, the Court considers the same factors relevant to its *Miranda* waiver analysis: Mr. Alvarez's age, intelligence, and education; whether he was informed of his rights; the length and nature of the detention and interrogation; and the use or threat of physical force against Mr. Alvarez. *Smith*, 606 F.3d at 1276. However, the defendant's personal characteristics "are relevant only if this court first concludes that the officers' conduct was coercive." *Lopez*, 437 F.3d at 1064 (quotation omitted). Accordingly, the Court focuses first on the circumstances of the interrogation. *See id.*

The video evidence does not show any threat of force or use of force against Defendant. *See generally* [Doc. 46-2]; *Smith*, 606 F.3d at 1276. As for the length of the

interrogation, Mr. Alvarez was questioned for approximately 25 minutes, [Doc. 46-2 at 7:21:00–7:45:46]; the investigators then took a break for approximately 52 minutes, [*id.* at 7:45:50–8:37:17]; and the interrogation then resumed for another 29 minutes before the video cuts off, [*id.* at 8:37:20–9:06:05]. Because Mr. Alvarez seeks to suppress "all" of the statements made throughout the interrogation, there is no specific point from which the Court could determine whether the length of the interrogation became so prolonged that it became coercive. But considering the interrogation as a whole, it does not appear overly lengthy. *See United States v. Woody*, No. 1:18-cr-03902-JB, 2020 WL 3513486, at *26 (D.N.M. June 29, 2020) (interrogation lasting for an hour and fifteen minutes was not long enough to be coercive), *aff'd*, 45 F.4th 1166; *United States v. Martinez*, No. 1:02-cr-01055-JB, 2006 WL 4079686, at *14 (D.N.M. Nov. 21, 2006) (two-hour interrogation did not render statements involuntary); *Carter v. Bigelow*, 787 F.3d 1269, 1295 (10th Cir. 2015) (interrogation consisting of two four- to five-hour periods over two days was not "unusually long").

Defendant relies primarily on what he perceives to be improper promises of leniency. *See* [Doc. 46 at 12]. Specifically, Defendant contends that Agent Hughes "impl[ied] that Mr. Alvarez talking" could "get him 50% off his sentence, which is not only an implied promise of leniency but also a lie as the United States Attorney's Office for the District of Colorado has a policy of recommending a maximum of 30% off." [*Id.*]. The Government responds first that Agent Hughes's assertion that he had seen reductions as high as 50% is "an accurate statement," with counsel for the Government representing that "he has personally seen larger reductions than 30%." [Doc. 50 at 9–10]. Then, the Government argues that Agent Hughes's statement was a promise of leniency and did

not amount to coercion.  [*Id.* at 10].  The Government asserts that general statements about leniency or cooperation do not amount to coercion, distinguishing this case from others in which the government made "concrete promise[s] that the agent could not possibly deliver."  [*Id.* at 10–11].  Then, it contends that even if there was a coercive promise, the relevant factors weigh against a finding of involuntariness.  [*Id.* at 12–13].

During the interrogation, Agent Hughes made the following statements:

Agent Hughes:  Look, alright.  Let me do this, dude.  Here's how I can help.  You have two chances -- two, two opportunities.  One is right now and one is down the road, right?  Down the road it -- you're likely gonna be in for a little bit down the road, right?  'Cause you were let out of detention on this thing, right?  So down the road, whatever information you have isn't gonna be good anymore.  Right now I can take information.  Right?  I'm just being straight up with you.  I'm not playing any games, nothing.  Right now I can take information.  If I can work with that information and I can do something with it, then it helps you when it comes to them -- If you get sentenced, if you get convicted, right, because you're not convicted, but if you get convicted and you get sentenced, that helps you.  And I've seen it as much as 50%, bro.  Right?  Like, that's a big deal.  But these are, these are like, these are main issues right here you gotta like, make conscious decision of what you wanna do. . . .

Agent Hughes:  You don't have to say anything about what we're asking but what are you thinking right now?

Defendant:  I wanna go home.

Agent Hughes:  I hear you, but that's not how this plays, so --

Defendant:  [unintelligible]

Agent Hughes:  You mean you want to go home today? I can't do it, bro.  You almost had probation.  All I can do right now is help you down the road.

Defendant:  I wanna go home.

Agent Hughes:  Did I help you in the past?

Defendant:  Yeah, but --

Agent Hughes:  Okay.

Defendant:  I wanna go home. I'll give you fucking names, bro.  I know everybody, you know?

Agent Hughes:  Oh I know.  I don't think I have the power to let you go.  I will tell you this -- I'll call and I'll check, but I don't think I have that power.  Right?  But you gotta give me an idea of what you got.  You don't have to tell me information, you can just give me a name.  You gotta show that whatever you have is of value.

[Doc. 46-2 at 7:25:58–7:30:06].

"Under Supreme Court and Tenth Circuit precedent, a promise of leniency is relevant to determining whether a confession was involuntary and, depending on the totality of the circumstances, may render a confession coerced." *Lopez*, 437 F.3d at 1064 (quotation omitted).  But the Tenth Circuit "distinguishes implications from promises of leniency." *Pena*, 115 F.4th at 1260.  For example, in *Lopez*, the Tenth Circuit concluded that officers improperly promised leniency to the defendant by, in combination with their actions, stating that the defendant "could be looking at six years" if he cooperated, but "could be looking at 60 years" if he did not, as the promise was "of the sort that may indeed critically impair a defendant's capacity for self-determination." *Lopez*, 437 F.3d at 1061, 1065.  In addition, an assurance that the defendant could "physically buy down" the length of his sentence and that truthful answers would "tick[] time off" his sentence was a coercive promise. *United States v. Young*, 964 F.3d 938, 944–45 (10th Cir. 2020).  On the other hand, merely telling a suspect about "past criminals" who received leniency for cooperation is not coercive, *see United States v. Morris*, 247 F.3d 1080, 1089 (10th Cir. 2001), nor is a statement that the investigator will tell the prosecutor about the suspect's cooperation, *United States v. Garot*, 801 F.2d 1241, 1245 (10th Cir. 1986).  Similarly, vague, non-committal statements are generally not considered coercive.  *See, e.g.*,

*Varela*, 576 F. App'x at 777–78 (statement that "I think we can . . . do something" was not a coercive promise); *United States v. Roman-Zarate*, 115 F.3d 778, 780, 783–84 (10th Cir. 1997) (statement that cooperation "could help" the defendant was not a coercive promise).

The Court first considers Agent Hughes's statement that he had seen sentences reduced by "as much as 50%" resulting from cooperation. Although Mr. Alvarez characterizes this statement as a "lie" because he believes the United States Attorney's Office does not, as a matter of policy, recommend reductions greater than 30%, [Doc. 46 at 12],[5] this statement is akin to telling Defendant about "past criminals" who received leniency for cooperation, which the Tenth Circuit has held does not amount to impermissible promises of leniency, *see Morris*, 247 F.3d at 1089.

Agent Hughes also told Mr. Alvarez that he "can help" Mr. Alvarez, said that cooperating would "help" Mr. Alvarez with respect to sentencing, and asked Mr. Alvarez if he would be helping himself that day. The Court finds these statements similar to the statement at issue in *United States v. Rodebaugh*, where an agent told the defendant "[i]f you work with us, we'll go easy on you." 798 F.3d 1281, 1292 (10th Cir. 2015). The Tenth Circuit held that this "vague and non-committal" statement was not a promise of leniency but was, at most, "a 'limited assurance'" that the Tenth Circuit has "held to be a

---

[5] Counsel for the Government argues that he has seen larger reductions than 30%. [Doc. 50 at 10]. Although prosecutors are officers of the court, *see Holloway v. Arkansas*, 435 U.S. 475, 486 (1978) ("[A]ttorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath." (cleaned up)), this Court need not rely upon counsel's statement to conclude that Agent Hughes's statement was not coercive. Indeed, it is not even clear that Agent Hughes is referring to sentencing resulting from federal prosecution by the United States Attorney's Office for the District of Colorado, rather than sentencing resulting from state prosecution by the El Paso County District Attorney.

permissible interrogation tactic." *Id.* at 1293 (quoting *United States v. Lewis*, 24 F.3d 79, 82 (10th Cir. 1994)); *see also United States v. Chavez*, No. 1:21-cr-00294-JCH, 2022 WL 252355, at *12 (D.N.M. Jan. 27, 2022) (statement that officers "would help" the defendant were not promises of leniency); *United States v. Montoya*, No. 1:21-cr-00997-KWR, 2024 WL 1858251, at *12 (D.N.M. Apr. 29, 2024) (same). The Court concludes that Agent Hughes's statements during the interrogation were not coercive promises of leniency and did not render Mr. Alvarez "so gripped by the hope of leniency that he did not or could not freely and rationally choose among the available courses of action." *Rodebaugh*, 798 F.3d at 1293 (quotation omitted).

Considering all of the relevant factors, the Court finds that the officers' actions were not coercive, and as a result, the Court need not discuss Mr. Alvarez's personal circumstances. *Lopez*, 437 F.3d at 1064; *see also Chavez*, 2022 WL 252355, at *13. The Court concludes that the statements Mr. Alvarez made during the September 2, 2022 interrogation were voluntary and suppression is not warranted. The Motion to Suppress Statements is respectfully **DENIED**.

## CONCLUSION

For the reasons set forth above, it is **ORDERED** that:

(1)    The Motion to Suppress Physical Evidence [Doc. 45] is **DENIED**;

(2)    The Motion to Suppress Statements [Doc. 46] is **DENIED**; and

(3)     On or before **November 7, 2024**, the Parties shall meet and confer with respect to the requirements of the Speedy Trial Act and shall file a joint status report setting forth their position(s) as to the applicable Speedy Trial Act date, for purposes of resetting the trial.


DATED:  October 31, 2024                    BY THE COURT:

                                            Nina Y. Wang
                                            United States District Judge